UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-80385-Civ-Brannon

SUN LIFE ASSURANCE COMPANY
OF CANADA (U.S.),

       Plaintiff(s),

vs.

IMPERIAL HOLDINGS, INC., et al.,

       Defendant(s).
_____/

## ORDER GRANTING MOTION TO DISMISS (DE 46)

THIS CAUSE is before the Court on Defendants'[1] Motion to Dismiss for failure to state a claim under Rule 12(b)(6) (DE 46). For the following reasons, Defendants' Motion to Dismiss (DE 46) is GRANTED, and Plaintiff Sun Life's Amended Complaint (DE 39) is DISMISSED WITHOUT PREJUDICE.

### I.    FACTUAL BACKGROUND

Sun Life alleges that Defendants collaborated in a stranger-originated life insurance (STOLI) scheme in which elderly applicants were induced to take out life insurance policies by Defendant Imperial Holdings, who established trusts to act as owners of the life insurance policies so that Imperial Holdings, who had no relationship to the insureds, could obtain rights and interests in the death benefits of the policies, all in violation of the law.

---

[1] Defendants in this action include Imperial Holdings, Inc.; Imperial Premium Finance, LLC; Imperial Life Financing II, LLC; Imperial Life Settlements, LLC; Imperial PFC Financing, LLC; Imperial PFC Financing, II, LLC; OLIPP I, LLC; and PSC Financial, LLC.

According to the Amended Complaint, Imperial Holdings and various insurance producers, senior insureds, trustees, the Bank of Utah, and an entity known as the Family Insurance Trust perpetrated a fraud upon Sun Life through machinations designed to improperly obtain ownership in life insurance policies. Allegedly, Imperial Holdings used producers[2] appointed to sell life insurance products for Sun Life to solicit senior citizens to purchase insurance policies. They reached these seniors through advertisements in periodicals, seminars, flyers, and personal solicitation at senior care centers, hospitals, and clubs. The producers advised the seniors that life insurance could be taken out without risk or cost to the senior insureds, promising that if the seniors qualified, they would be compensated for participating. Producers would meet with seniors, obtain a HIPAA authorization form, gather their medical records, and obtain life expectancy reports. They would submit the medical records to a series of life insurers as part of a trial application; once insurability was determined, the producers prepared an illustration indicating the cost of policy premiums. Imperial Holdings would review the information and advise the producers whether it would fund the purchase of the policy.

The producers would help prepare an irrevocable life insurance trust, which would serve as the policy's owner. The trustees[3] were usually not selected by the senior insureds and took direction from Imperial Holdings and certain unidentified "agents" about how policies were to be applied for and maintained. Imperial Holdings provided the trustees with documents—trust agreements and form letters requesting policy information from Sun Life—to be executed prior to the issuance of the policy and while the policy was in force. The producers, senior insureds, and trustees—who, according to Sun Life, were all agents of Imperial Holdings—would complete the policy applications, which included questions about whether the policy was being

---

[2] *See* Am. Compl. (DE 39 at 8) for eighteen names of producers.
[3] *See* Am. Compl. (DE 39 at 9-10) for twenty-six names of trustees.

purchased for the purpose of assignment or sale to a third party; whether the senior insured had the means to pay the premiums; and whether the premiums would be financed, paid by the policy holder, or paid by a third party. However, the producers, senior insureds, and trustees lied[4] about the purpose of the policy, the financial means of the senior insured, and the source of the premium. Once Imperial Holdings approved the application, Imperial Holdings or certain unidentified "agents" would advance funds to the trustees to make the first premium payment; subsequent premium payments were advanced under the guise of a loan, and these loan proceeds would be deposited in an account at the Bank of Utah in the name of the "Family Insurance Trust," which would make subsequent premium payments.

Additionally, the producers were required to submit to Imperial Holdings the commissions paid by Sun Life, which the producers improperly concealed from Sun Life. Imperial Holdings used these commissions to fund the loan transactions that would, according to the terms of the loan, fund the premiums for two years, at which time the loan would come due, along with 11-16% interest and a 10% loan origination fee. The senior insureds could avoid all repayment obligations by signing over the policy to Imperial Holdings. When the senior insureds did not repay the loan—and most of them did not—Imperial Holdings foreclosed on the loans and acquired the policies. At issue in this lawsuit are 28 policies with an aggregate face value of over $126 million that Sun Life alleges were procured in this manner.

The Amended Complaint alleges the following counts against Defendant Imperial Holdings, Inc., alone: RICO (Count I); RICO Conspiracy (Count II); Fraud (Count III); Conspiracy to Commit Fraud (Count IV); and Tortious Interference (Count V). The remaining

---

[4] *See* Am. Compl. (DE 39 at 24-38) for allegedly false statements.

two counts, Equitable Accounting (Count VI) and Declaratory Judgment (Count VII), are alleged only against the remaining Defendants.

## II. DISCUSSION

### A. Legal Standard

Defendants move to dismiss all seven counts of the Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. In reviewing a motion to dismiss, all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true. *Jackson v. Okaloosa Cnty.*, Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). A complaint must contain enough "facts to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and the factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted).

Claims alleging fraud must also comport with Rule 9(b), which requires that "'the circumstances constituting fraud or mistake . . . be stated with particularity.'" *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007) (quoting Fed. R. Civ. P.9(b)). Rule 9(b) is meant to alert defendants in fraud actions "to the precise misconduct with which they are charged" and guard against "spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370–71 (11th Cir. 1997) (internal quotations omitted).

Rule 9(b) is satisfied if the complaint sets forth: (1) the exact statements (or omissions) made and, if applicable, in what documents; (2) the time and place of each such statement and who made the statement (or, in the case of omissions, the person who did not make the statement); (3) the substance of the statement and how it misled the plaintiff; and (4) the

defendant's gain due to the alleged fraud. *Id*. Ultimately, the allegations should "adequately describe the nature and subject of alleged misrepresentation" with "precision and some measure of substantiation." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 790-91 (3d Cir. 1984).

B. Party Contentions

1. Fraud (Count III) [5]

Sun Life fails to state a claim for fraud. To state a claim for fraud under Florida law, a plaintiff must allege that (1) the defendant made a false statement of material fact; (2) the defendant knew the representation was false; (3) the defendant intended that the plaintiff rely on the false statement; and (4) the plaintiff suffered damages in justifiable reliance on the false statement. *Yanks v. Barnett*, 563 So. 2d 776, 778 (Fla. 3d DCA 1990).

Sun Life concedes that it does not allege that Imperial Holdings itself uttered any false statements. Rather, Sun Life's fraud claim is premised on the theory that certain third parties—producers, senior insureds, and trustees—acted at Imperial Holdings' behest and lied on life insurance applications about the purpose of the policy, the financial means of the insured, and the source of the premium on the applications. (DE 39 at 2, 10-11, 21). Sun Life contends that its allegations that Imperial Holdings "directed and controlled" a conspiracy, as well as its assertion that it "caused" the misrepresentations set forth in the Amended Complaint are sufficient to state a claim for fraud. However, Imperial Holdings contends—and the Court agrees—that Sun Life fails to allege facts that support its theory that the producers, senior insureds, and trustees were

---

[5] Imperial Holdings contends that Sun Life included three policies in its Amended Complaint that would not be part of any purported scheme, since applications for these policies were submitted to Sun Life before the creation of Imperial, and two policies that were never subject to premium financing or foreclosed upon by Imperial Holdings and are, likewise, improperly included. However, at this stage, the veracity of Sun Life's allegations is not before the Court; all allegations in Sun Life's Amended Complaint will be taken as true.

actual or apparent agents of Imperial Holdings and, thus, that their misrepresentations were fully imputable to Imperial Holdings.

Under Florida law, an agency relationship may be either actual or apparent. *PYCSA Panama, S.A. v. Tensar Earth Tech., Inc*., 625 F. Supp. 2d 1198, 1252 (S.D. Fla. 2008). An actual agency relationship exists where there is: (1) acknowledgement by the principal that the agent will act for him; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the agent's actions and day-to-day activities. *Id*. (citing *Ocana v. Ford Motor Co*., 992 So. 2d 319, 326 (Fla. 3d DCA 2008)). An apparent agency relationship exists where there is: (1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance upon such representation. *Id*. "Apparent authority does not arise from the subjective understanding of the person dealing with the purported agent, nor from appearances created by the purported agent himself; instead, apparent authority exists only where the principal creates the appearance of an agency relationship." *Ocana*, 992 So. 2d at 326 (internal quotation marks omitted).

The parties hotly contest whether Rule 9(b) applies to the agency allegations which underpin Sun Life's claims of fraud. Sun Life, citing two unpublished cases from the Southern District of Florida, contends that, since those courts found that agency allegations need not meet Rule 9(b)'s particularity requirement, this Court must do so as well. Imperial Holdings disagrees, citing a plethora from out-of-circuit cases, including the Seventh and Federal Circuits.

The Court has examined the two cases cited by Sun Life: *CFTC v. Gibraltar Monetary Corp., Inc*., No. 04–80132–CIV–DIMITROULEAS (S.D. Fla. Oct. 21, 2004) (rejecting argument that Rule 9(b) requires a plaintiff to plead the existence of an agency relationship with particularity when agency is a circumstance of alleged fraud and plaintiff used entirely separate

6

facts to plead agency and the fraud); and *Continent Aircraft Trust, 1087 v. Diamond Aircraft Industries, Inc.*, Civ. No. 11-61663, 2013 WL 2285539, at *4 (S.D. Fla. May 23, 2013) (finding persuasive *CFTC*'s holding regarding application of Rule 9(b) even when predicate facts of agency and fraud were not separate).

The Court considers *CFTC*'s rationale underpinning its ruling persuasive: Rule 9(b) should not apply to agency allegations when separate facts are used to plead agency and fraud. In this case, however, the predicate facts for the agency and fraud are the same, and, applying *CFTC*'s rationale, Rule 9(b) should apply. This determination reconciles *CFTC*'s holding and the rationale for Rule 9(b)'s more stringent standard as expressed by the Seventh Circuit in *Lachmund v. ADM Investor Servs.*, 191 F.3d 777, 783 (7th Cir. 1999): "[W]hen the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship . . . the reasons for more particularized pleading that animate Rule 9(b) apply with equal force to the issue of agency and to the underlying fraud claim." *See also W. Sugar Co-op. v. Archer-Daniels-Midland Co.*, CV 11-3473 CBM MANX, 2012 WL 3101659 (C.D. Cal. July 31, 2012).

Sun Life also argues that the Court may apply "Rule 9(b)'s heightened pleading standard . . . less stringently . . . when specific factual information about the fraud is peculiarly within the defendant's knowledge or control." *See U.S. ex rel Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007). Sun Life seemingly contends that since evidence has come to light since it filed its Amended Complaint showing that Imperial Holdings—despite its protestations to the contrary—was involved in the applications of policies before they were issued, the Court should relax the pleading standards Sun Life must meet. This does not

demonstrate that "specific factual information about the fraud is peculiarly within the defendant's knowledge or control." *Id*.

In any event, this newly discovered evidence is not something the Court can consider in ruling on this motion to dismiss, since "the scope of the Court's review is 'limited to the four corners of the complaint.'" *Ventrassist Pty Ltd. v. Heartware, Inc*., 377 F. Supp. 2d 1278, 1285 (S.D. Fla. 2005) (citing *St. George v. Pinellas Cnty*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Thus, at this time, the agency relationship alleged as part of Sun Life's fraud claim must comport with Rule 9(b).

Applying that standard, the Court determines that there are no facts in the Amended Complaint that establish an actual agency relationship existed between Imperial Holdings and the producers, senior insureds, or trustees. Sun Life's contentions that Imperial Holdings "managed and controlled" the producers, senior insureds and trustees, or that Imperial Holdings "caused" applications for life insurance to be submitted are insufficient to establish an agency relationship. (DE 39 at 2, 10, 20-21). Nor can it establish an agency relationship merely by listing the names of the producers, senior insureds, and trustees and alleging that these third parties made certain false statements. (DE 39 at 21-38). Sun Life's allegations that these third parties were "agents" of Imperial Holdings or acted "at the direction of and for the benefit of Imperial" are likewise insufficient to establish an agency relationship (DE 39 at 10, 17, 42); there are no facts establishing that Imperial Holdings acknowledged that the producers, senior insureds, or trustees would act for it, and, accordingly, no facts establishing that they accepted the undertaking. *PYCSA Panama, S.A.,* 625 F. Supp. 2d at 1252 (citations omitted). Nor are there facts alleged suggesting that Imperial Holdings had day-to-day control over these purported agents. *Id.* In this regard, Sun Life's allegations that Imperial Holdings "utilized" the producers (DE 39 at 8),

"selected them" and "provid[ed] instructions regarding the application" for the policies, (DE 39 at 9-10) are not tantamount to an assertion of day-to-day control. Nor does Sun Life allege how Imperial Holdings controlled the day-to-day actions of myriad senior insureds; allegations that Imperial Holdings "controlled" or "directed" the senior insureds are too broad—and, frankly, too unlikely—to suffice. Nor does Sun Life allege facts that sufficiently establish that Imperial Holdings had control over the day-to-day activities of the trustees. While all these parties are alleged to have done things that would ultimately benefit Imperial Holdings, that does not establish that an actual agency relationship existed.

Nor can Sun Life establish an apparent agency relationship, since there are no facts alleged that Imperial Holdings, the purported principal, made a representation that the producers, trustees, or senior insureds were its agents. *See PYCSA Panama, S.A.*, 625 F. Supp. 2d at 1252 (requiring, for actual agency, acknowledgment by principal that agent will act on its behalf and, for apparent agency, representation by the principal); *see also Ocana*, 992 So. 2d at 326-27. Nor does it matter if any of the purported agents did anything to create the appearance of an agency relationship, since "[a]pparent authority does not arise from the subjective understanding of the person dealing with the purported agent, nor from appearances created by the purported agent himself; instead, apparent authority exists only where the principal creates the appearance of an agency relationship." *Ocana*, 992 So. 2d at 326 (internal quotation marks omitted). At this stage, Sun Life has failed to state a claim for fraud with the requisite particularity under Rule 9(b).

Accordingly, Count III is DISMISSED WITHOUT PREJUDICE.

   2.   *Conspiracy to Commit Fraud (Count IV)*

Because the Court finds that Sun Life has failed to state a claim of fraud, its claim for civil conspiracy also fails. To state a claim for civil conspiracy under Florida law, a plaintiff

must allege: "(1) an agreement among two or more parties; (2) the doing of an unlawful act or a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of the acts done under the conspiracy." *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1440 (M.D. Fla. 1998) (citing *Fla. Fern Growers Ass'n v. Concerned Citizens of Putnam Cnty.*, 616 So. 2d 562, 565 (Fla. 5th DCA 1993)).

However, a plaintiff's conspiracy claim fails if the underlying fraud claim fails. "Because a civil conspiracy claim is not an independent cause of action in Florida, if a court dismisses the predicate claim, . . . the court must also dismiss the conspiracy claim." *In re Palm Beach Fin. Partners, L.P.*, 488 B.R. 758, 777 (Bankr. S.D. Fla. 2013) (internal quotations omitted) (citing *Behrman v. Allstate Life Ins. Co.*, 178 F. App'x 862, 863 (11th Cir. 2006)); *Haskin*, 995 F. Supp. at 1440 (dismissing civil conspiracy claim where the unlawful act supporting the conspiracy claim is a deficiently-pleaded fraud claim). Sun Life fails to assert the underlying fraud claim with the requisite particularity under Rule 9(b), and, thus, fails to assert a claim for civil conspiracy.

Accordingly, Count VI is DISMISSED WITHOUT PREJUDICE.

### 3. Tortious Interference with Contractual Relations (Count V)

Sun Life also fails to state a claim for tortious interference with a contractual or business relationship. To successfully state such a claim, a plaintiff must allege: (1) the existence of a contract or business relationship; (2) the defendant's knowledge of the relationship; (3) intentional and unjustified interference with the contract or business relationship; (4) damage to the plaintiff as a result of the interference. *Pilkington v. United Airlines*, 112 F.3d 1532, 1540 (11th Cir. 1997). Rule 9(b) applies to a tortious interference claim when there are fraud allegations underlying the claim. *Medimport S.R.L. v. Cabreja*, Case No. 12-22255-CIV, 2013

WL 1003625, at *13 n.10 (S.D. Fla. Mar. 12, 2013); *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007); *Wolff v. Rare Medium*, *Inc.*, 210 F. Supp. 2d 490, 500 (S.D.N.Y. 2002). When, a plaintiff claims a defendant tortiously interfered with the plaintiff's business relationship through the defendant's fraudulent conduct, that conduct must be pleaded with the specificity required by Rule 9(b). *See Medimport*, 2013 WL 1003625, at *14; *Borsellino*, 477 F.3d at 507.

Rule 9(b) applies to this claim because it is premised on the theory that Imperial Holdings interfered with the contractual relationship between Sun Life and its producers by Imperial Holdings fraudulent conduct, including assisting the producers in submitting applications for life insurance containing fraudulent statements, assisting the producers in submitting documents related to the life insurance policies, and establishing sham trusts through which premiums were funneled to conceal the nature of the policies and Imperial Holdings' interest in them. (DE 39 at 44-45). Sun Life contends that it is sufficient for it to have alleged that Imperial Holdings knew of Sun Life's contractual relationship with the producers and actively assisted the producers' violations of their contracts with Sun Life, and that Sun Life suffered damages as a result. However, because Sun Life's fraud allegations were premised on a theory of agency—and because those allegations, as discussed, were not stated with the requisite particularity under Rule 9(b), at this juncture, Sun Life has failed to state a claim for tortious interference against Imperial Holdings.

Accordingly, Count V is DISMISSED WITHOUT PREJUDICE.

4.   *Civil RICO (Count I)*

Sun Life fails to allege facts sufficient to state a claim for a RICO violation under § 1962(c), which makes it unlawful "to conduct or participate, directly or indirectly, in the

conduct of [an] enterprise [that affects interstate commerce] through a pattern of racketeering activity." *Rep. of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 948-949 (11th Cir. 1997). To state a claim under section 1962(c), a plaintiff must allege: "(1) the existence of an enterprise; (2) that the enterprise affected interstate commerce; (3) that the defendants were employed by or associated with the enterprise; (4) that the defendants participated . . . in the conduct of the affairs of the enterprise; and (5) that the defendants participated through a pattern of racketeering activity." *U.S. v. Starrett*, 55 F.3d 1525, 1541 (11th Cir. 1995); *U.S. v. Lynch*, 287 F. App'x. 66, 68 (11th Cir. 2008). Rule 9(b) applies to RICO claims. *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 782 (7th Cir. 1999) (citations omitted).

At this stage, Sun Life's failure to allege facts with the particularity necessary to sustain a fraud claim under Rule 9(b) is fatal to its RICO claim. While Imperial Holdings asserts three arguments supporting its position that the RICO claim should be dismissed, the Court need not address each one; Sun life's failure to allege that Imperial Holdings participated in a pattern of "racketeering activity," as defined as the violation of any of the criminal statutes listed in section 1961(1) is fatal to its claim. *See* 18 U.S.C. § 1961(1).

To establish a pattern of racketeering activity, Sun Life must allege "at least two acts of racketeering activity" within a ten-year period, 18 U.S.C. § 1961(5), and must allege facts sufficient to support each of the statutory elements for those two predicate acts. *Rep. of Panama*, 119 F.3d at 949. From the activities listed in section 1961(1), Sun Life alleges that Imperial Holdings committed wire and mail fraud in violation of 18 U.S.C. §§ 1341 and 1343.15 (DE 39 at 21-38). Both mail and wire fraud require that a person "(1) intentionally participate[] in a scheme or artifice to defraud another of money or property, and (2) use[] or 'cause[]' the use of the mails or wires for the purpose of executing the scheme or artifice." *U.S. v. Ward*, 486 F.3d

12

1212, 1221 (11th Cir. 2007). In turn, "[a] scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." *U.S. v. Maxwell*, 579 F.3d 1282, 1299-1300 (11th Cir. 2009). While the nondisclosure of material information could constitute a violation of the mail and wire fraud statutes, this is true only "where a defendant has a duty to disclose." *Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1359–60 (11th Cir. 2004).

Where a RICO claim relies on mail and wire fraud as the predicate acts, a plaintiff must meet Rule 9(b)'s heightened standard by alleging, as to each defendant, "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiffs; and (4) what the defendants gained by the alleged fraud." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007). In addition, mail and wire fraud require allegations and proof of scienter. *Liquidation Com'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1354 (11th Cir. 2008); *see also Rep. of Panama*, 119 F.3d at 949.

Sun Life's Amended Complaint fails to meet Rule 9(b)'s standard for pleading claims of mail and wire fraud because it does not contain any factual allegations that Imperial Holdings made any misrepresentations to Sun Life or that Imperial Holdings had a duty to disclose any information to Sun Life. The list of allegedly false statements made on the applications were made by the "applicants"—the producers, insureds, and trustees—but not Imperial Holdings. These statements are not imputable to Imperial Holdings, as discussed, because an agency relationship has not been adequately alleged.

While Sun Life, indeed, enumerated various statements that it contends were fraudulent misrepresentations in the life insurance applications submitted to it via mail, fax, or email, since

13

those statements are alleged to have been made by the producers, senior insureds, or trustees, and since Sun Life did not allege facts sufficient to establish that an agency relationship existed between any of these parties and Imperial Holdings, those alleged fraudulent misrepresentations cannot be said to form a pattern of racketeering activity in which Imperial Holdings was involved.

Accordingly, Count I is DISMISSED WITHOUT PREJUDICE.

### 5. *Conspiracy to Commit RICO (Count II)*

Sun Life also fails to state a RICO conspiracy claim. Section 1962(d) makes it unlawful for any person to conspire to violate Section 1962(a), (b), or (c). To state a claim of RICO conspiracy, the plaintiff must allege either (1) "an agreement of an overall objective" or (2) "that a defendant agreed personally to commit two predicate acts." *Managed Care Litig.*, 150 F. Supp. 2d at 1350. In addition, the defendant must have "joined knowingly in the scheme and been involved himself, directly or indirectly, in the commission of at least two predicate offenses." *Cox v. Admin'r. U.S. Steel & Carnegie*, 17 F.3d 1386, 1410, reh'g en banc denied, 30 F.3d 1347 (11th Cir. 1994); cert. denied *USX Corp. v. Cox*, 513 U.S. 1110 (1995).

To be guilty of a conspiracy to commit a RICO violation, the parties must first have violated a provision of the RICO statute. *Jackson v. BellSouth Telecom.*, 372 F.3d 1250, 1269 (11th Cir. 2004) ("To be guilty of conspiracy . . . parties must have agreed to commit an act that is itself illegal—parties cannot be found guilty of conspiring to commit an act that is not itself against the law."). Thus, a RICO conspiracy claim necessarily fails if the underlying RICO claim fails. At this stage, because the Court finds that Sun Life has failed to state an underlying RICO violation, the RICO conspiracy claim fails.

Accordingly, Count II is DISMISSED WITHOUT PREJUDICE.

> 6.     *Equitable Accounting (Count VI)*

Sun Life fails to state a claim for equitable accounting under Rule 12 (b)(6). "Under Florida law, a party that seeks an equitable accounting must show that: 1) the parties share a fiduciary relationship or that the questioned transactions are complex, and 2) a remedy at law is inadequate." *Immediate Capital Grp., Inc. v. Spongetech Delivery Sys., Inc.*, 10-60059-CIV, 2010 WL 1644952 (S.D. Fla. Apr. 22, 2010) (*citing Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1071 (11th Cir.2007)).

Sun Life does not contend that it is entitled to an equitable accounting because the parties share a fiduciary duty; nor does it contend that the questioned transactions are complex; rather, it contends that an equitable accounting is required because an unknown quantity of other policies were fraudulently procured from Sun Life pursuant to the Imperial scheme. Nor does Sun Life argue that no remedy at law exists; rather, it contends that an equitable accounting is required because it is entitled to damages in connection with every policy procured under Imperial's scheme—but that is cannot identify other unknown policies—and thus, determine what damages are owed it—until Imperial accounts for those policies.

Equitable accounting is not a substitute for discovery. *See Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 694 F.Supp.2d 1275, 2010 WL 309038, at *5 (S.D. Fla. Jan.25, 2010) ("Where a party has the opportunity to establish their damage claim through discovery, a request for accounting is not appropriate."). Sun Life's need for information concerning additional, unknown policies is not a sufficient reason to find that an equitable accounting, as opposed to discovery, is required. *Zaki Kulaibee Establishment v. McFlicker*, 788 F. Supp. 2d 1363, 1370-71 (S.D. Fla. 2011) (determining that nothing in record indicated why party seeking equitable accounting could not obtain the documents it needed through discovery and noting that

arguments advanced in support of an equitable accounting were "more appropriately grounds for a motion to compel"). Moreover, an adequate remedy at law exists when a party seeking information it needs can obtain it through discovery. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1071 (11th Cir. 2007) (finding that adequate remedy at law existed for breach of contract claim despite party's contention "that it has no adequate remedy at law without a proper accounting, as an accounting is necessary to determine the amount due" because party could use the discovery process to obtain the information it needed). Sun Life has not satisfied any of the requirements to state a claim for an equitable accounting.

Accordingly, Count VI is DISMISSED WITHOUT PREJUDICE.

7. *Declaratory Judgment (Count VII)*

Sun Life fails to state a claim for declaratory judgment. The Court agrees with Imperial that Sun Life's claim for declaratory judgment fails because, as discussed *supra*, the underlying allegations of fraud are not stated with the particularity required by Rule 9(b). *See Mata v. Citimortgage, Inc.*, No. 10-9167-DSF, 2011 WL 4542723, at *1–2 (C.D. Cal. Sept. 26, 2011) (dismissing portion of claim for declaratory relief premised on fraudulent conduct for failure to satisfy the requirements of Rule 9(b)).

Accordingly, Count VII is DISMISSED WITHOUT PREJUDICE.

### III. CONCLUSION

Accordingly, the Court ORDERS as follows:

(1) Defendants' Motion to Dismiss (DE 46) is GRANTED;

(2) The Amended Complaint (DE 39) is DISMISSED WITHOUT PREJUDICE; if Sun Life wishes to file a Second Amended Complaint, it may do so by July 28, 2014; and

(3) Defendants' Motion to Dismiss (DE 99) is DENIED AS MOOT.[6]

DONE and ORDERED in Chambers at West Palm Beach in the Southern District of Florida, this 26th day of June, 2014.

_____
DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE

---

[6] Imperial is free to re-raise its 12(b)(1) challenge in any subsequent Motion to Dismiss it may file.