# EXHIBIT 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:13-cv-80385

SUN LIFE ASSURANCE COMPANY
OF CANADA (U.S.),

Plaintiff,

v.

IMPERIAL HOLDINGS, INC., et al.,

Defendants.
_____/

## STATEMENT OF ANTONY MITCHELL
### (December 23, 2014)

I, Antony Mitchell, declare the following:

1. I am of legal age, Chief Executive Officer at Imperial Holdings, Inc., and I reside in Wellington, Florida. I issue this document based on my personal knowledge and/or my review of relevant business records pertaining to the Sun Life Policies at issue in this case and the Producers involved with those Policies.

2. Imperial had no knowledge of, or involvement with, a Producer's activities or how a Producer operated his business. The relationship that Imperial had with the Producers was limited to that documented in the executed Fee Agreements.

3. Imperial had no knowledge of how a Producer established relationships with prospective clients and was not involved in a Producer's relationships with his clients.

4. Imperial never acknowledged that the Producers would act on its behalf.

5. The Producers were not obligated to follow Imperial's suggestions nor did Imperial expect them to do so.

6. Imperial did not control anything about the manner in which a Producer solicited life insurance business or a Producer's day-to-day activities. Imperial did not dictate or control how the Producers performed their jobs. Imperial had no control over the Producers' hours of operation. Imperial did not even know what the Producers' day-to-day activities were, how the Producers performed their jobs, or even what the Producers' hours of operation were. There is very little that Imperial knows about the Producers, their operations, their personnel, and even

1

their business.

7. Imperial was not involved in the completion of the life insurance applications for the Policies or their submission to Sun Life. Imperial did not even see the applications after they were completed and before they were submitted to Sun Life. Imperial never asked, told, or even encouraged anyone to make a misstatement in any application.

8. The first time that Imperial saw the applications for the Policies was after Sun Life had issued each Policy.

9. Imperial had no knowledge of the circumstances surrounding the creation of the trusts used to apply for the Policies. Nor did Imperial have any knowledge of who bore the expenses associated with the formation of the trusts or the selection of the trustees.

10. Imperial was not involved in any of the communications between an insured or trustee and the Producer, nor was Imperial made aware of whether the policyowner was interested in premium financing until after a Policy was issued.

11. Because Imperial was not involved in the completion and submission of applications to Sun Life, Imperial did not know what statements were made by the applicants on the application or when or where the applications were completed.

12. Imperial was not involved in the first premium payment nor did it have any knowledge of the source of funds for the payment at the time it was made.

13. When Imperial received an issued policy, Imperial would begin its initial review and gather the information it needed to determine if it would consider entering into an agreement to fund a premium finance loan.

14. At any point in the process, the borrower (the Trust) could decide (for any reason) that it did not wish to enter into the premium finance loan agreement.

15. Under Imperial's review process, each potential loan had to be approved by an external insurer—AIG (the LPIC provider)—after the insurer's review of pricing and other documents. Notably, AIG declined to approve numerous deals for a variety of reasons (many of which were not even communicated to Imperial).

16. At the end of the approval process, Imperial would request from AIG an LPIC certificate, which constituted AIG's final approval. The LPIC certificate was required by Imperial's credit facility agreements as a condition to funding a premium finance loan.

17. No one at Imperial was authorized to enter into an agreement prior to Imperial's internal diligence process being completed and the funding form being signed.

18. After the funding form was signed, Imperial entered into and signed the loan documents. Imperial did not enter into an agreement prior to this time.

19. Where LPIC was in place for a Policy, all rights of ownership to the Policy upon

default of a loan initially belonged to AIG. If AIG decided to pay the premiums on a Policy, AIG provided the funds to Imperial and Imperial then, in its capacity as Servicer, made the arrangements necessary for the premiums to be paid. The Servicer maintains (services) the asset by, among other things, making required premium payments and requesting policy documentation on behalf of the owner.

Pursuant to Title 28, United States Code, Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 23, 2014.

_____
Antony Mitchell