**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH**
**CASE NO.  13-80385-CIV-BRANNON**

**SUN LIFE ASSURANCE COMPANY**
**OF CANADA,**

                    Plaintiff,

        vs.

                                        West Palm Beach, Florida
                                        February 4, 2015

**IMPERIAL HOLDINGS, INC.,** *et al.,*

                    Defendant.
_____


**TRANSCRIPT OF MOTION HEARING**
**BEFORE THE HONORABLE DAVE LEE BRANNON**
**UNITED STATES MAGISTRATE JUDGE**


**APPEARANCES:**

**FOR THE PLAINTIFF:**
                        *Drinker, Biddle & Reath, LLP*
                        **BY: JASON P. GOSSELIN, ESQ.**
                        **BY:  JOHN M. MOORE, ESQ.**
                        One Logan Square
                        Suite 2000
                        Philadelphia, PA  19103


**FOR THE DEFENDANT:**
                        *Holland & Knight, LLP*
                        **BY:  JESUS CUZA, ESQ.**
                        **BY:  PHILIP E. ROTHSCHILD, ESQ.**
                        **BY:  MONICA VILA, ESQ.**
                        701 Brickell Avenue
                        Suite 3000
                        Miami, Florida 33131

```
1      REPORTED BY:        DAWN M. WHITMARSH, RPR
                           Official Court Reporter
2                          400 N. Miami Avenue, 10S03
                           Miami, Florida  33128
3                          Telephone:  305-523-5598
```

4                          P-R-O-C-E-E-D-I-N-G-S

5              THE COURT:  We're here today in case number 13-80385,

6      Sun Life Assurance Company of Canada versus Imperial Holdings,

7      Inc., et al, and which has been consolidated with case number

8      13-80730.

9              If counsel would state their appearance please for the

10     record.

11             MR. GOSSELIN:  Good afternoon, Your Honor.  Jason

12     Gosselin with Drinker Biddle on behalf of Sun Life and I'm here

13     with my colleagues Steven Serfass and John Moore.

14             Mr. Serfass' *pro hac vici* was just entered recently.

15             THE COURT:  Very well.  Good afternoon to you all.

16             MR. CUZA:  Good afternoon, Your Honor.  Jesus Cuza from

17     Holland and Knight on behalf of the two remaining Imperial

18     parties with.

19             THE COURT:  Very well.

20             MR. CUZA:  With (inaudible) from Holland and Knight,

21     Philip Rothschild, Monica Vila (inaudible).

22             THE COURT:  And welcome to you all.  I think it will be

23     most useful to spend our time today with some brief argument on

24     the *Martinez* issue, in particular with respect to Defendant

25     Imperial's motion for summary judgment, docket entry 201.

1          So why don't I -- no more than about 15 minutes worth?

2     Can you all do that?  Very well.

3          MR. ROTHSCHILD:  Your Honor, do you need a copy of the

4     *Martinez* case?

5          THE COURT:  No, I don't.

6          MR. ROTHSCHILD:  Your Honor, our motion for summary

7     judgment based on *Martinez* is fairly straight forward.  It's our

8     position that we have an Eleventh Circuit that's directly on

9     point, that has held that fraud and RICO claims are barred by

10    the incontestability clause.

11         The case -- if I could actually just do a couple of

12    quotes at 1066, in looking at one of the policies, they say the

13    incontestability clause bars all other claims which all rely

14    upon allegations that the policy is tainted by fraud and include

15    RICO and fraud.  They say that a couple of other times.  And the

16    case that we have before you now has these exact claims.  It's

17    even the same theory of liability; that defendants are liable

18    for misrepresentations of others made at the time of the

19    application.  And this is 1065 of the opinion, you can see that

20    that is what's going on in *Martinez* and that is what is alleged

21    in this case.

22         Some of the points that Sun Life had raised in their

23    papers is that the case is distinguishable because this is a

24    claim here for damages and not to contest the policy.  But that

25    is exactly what *Martinez* was.  I mean, it's almost the same

1   claims.  You had the claim to void the policies, but you had

2   fraud claims, RICO claims.  The compensatory damages were being

3   sought in *Martinez*.  It's right in the complaint.  So that's not

4   a reason to distinguish it.

5        On the issue of case law, there is no other binding

6   contrary case law on this court.  The cases cited by Sun Life

7   either predate *Martinez* or don't address *Martinez*, the latter

8   being the Judge Middlebrooks decision in *Sciaretta*.  Why

9   *Martinez* wasn't addressed in that case, we don't know.  But it

10   doesn't -- and it doesn't change the effect of *Martinez* on this

11   court.

12        THE COURT:  What's our public policy reason for having

13   an incontestability clause?

14        MR. ROTHSCHILD:  Sure, Your Honor.  I have several

15   arguments if we're going to talk about public policy.  Because

16   the argument was raised on the motion to dismiss, I believe that

17   this would open the door to fraud.  Well, the Eleventh Circuit

18   has already made its ruling that it bars incontestability

19   clauses bar fraud claims.  State legislatures all over the

20   country have determined that there is a two-year period in which

21   to challenge life insurance policies for fraud.  They've already

22   made that policy decision.  Allowing Sun Life to continue with

23   fraud and RICO claims here would essentially eliminate the

24   decision that the state legislatures have already made.

25        Now, they could go get the law changed and as we know,

1    insurance companies have gotten the law to change after -- so

2    statutes have been enacted.  But they have nothing to do with

3    the policy in this case because none of those statutes were

4    retroactive.  So the policy, to go back to your question, was

5    that there was a limited period of time for insurance carriers

6    to challenge policies because we wouldn't want them, 30 years

7    down the road, to say you know what, I challenge this policy and

8    nobody has the evidence going back 30 years.  And obviously

9    they've been collecting premiums the whole time.  So the states

10   made the decision and drew the line at two years.  We may

11   disagree, but that is a legislative decision that has already

12   been made.

13            THE COURT:  And it makes people that want to buy

14   insurance to know that 30 years down the road when they need it,

15   the insurance company isn't going to suddenly come up and say

16   wait a minute, that insurance policy should be voided.  If they

17   were going to void it, they needed to do that early on when

18   everything is fresh.

19            MR. ROTHSCHILD:  That's true.  And remember that these

20   insurance policies, including the ones in this case, have

21   assignability and transfer rights because as we know, life

22   insurance is an asset.  And once you have a life insurance

23   policy that is valid -- and validity is no longer an issue in

24   this case, right.  The claim to void the policies has been

25   dismissed with prejudice.  That asset is not going to be worth

1    what it would if insurance companies have the right to sue

2    whenever they wanted on the guise of claiming damages for fraud

3    if they're able to do that at any time.  It obviously hurts the

4    value of the asset, you should be able to rely on the terms of

5    the contract.

6           Now, insurance companies could -- they could have added

7    or gotten the states to allow them to add a line into their

8    incontestability clause that says by the way, we can sue you for

9    other reasons, but they didn't do that. So they're stuck with

10   the contract that they wrote and persons who own the policies

11   are allowed to rely on those representations in the contract.

12          To go back, there was an argument raised, I don't know

13   if it was in the hearing or in the papers that well, Imperial is

14   not the owner.  Well, the *Martinez* case doesn't limit itself --

15   *Martinez* doesn't say only owners can raise this decision as a

16   bar to fraud based claims.  In fact, if you look underneath at

17   the complaint in *Martinez*, Mr. Livoti -- and it's amazing, this

18   Mutual Benefits case took ten years because I believe he was

19   just sentenced in November.  But in some of those policies he

20   was actually the owner.  So it's not a reason to distinguish

21   *Martinez* by saying that only, you know, the owner can raise the

22   contestability clause against fraud based claims.  The Eleventh

23   Circuit didn't say that, and you can understand for public

24   policy reasons why it would be a blanket bar on fraud based

25   claims.

1          So the I think that answered your question.  But to --
2          THE COURT:  It did, and I would just point out in your
3     comment there about insurance policies as assets, with the
4     prevalence of mortgage fraud a few years ago, we saw the impact
5     on commercial paper of bogus mortgages having to be withdrawn
6     from asset portfolios that they were in.  So there would be a
7     substantial economic impact if people were having to withdraw
8     insurance policies from asset portfolios that were put together.
9     So I think as you touched upon, that's another fine public
10    policy reason to have the incontestability clause in place.
11         MR. ROTHSCHILD:  That's true.  And this is not to
12    minimize, you know, the impact of fraud.  But the point is that
13    the -- that the policy decision where the state has drawn the
14    lines, and all states, and there was another argument that was
15    raised that well, *Martinez* only applies to the particular, I
16    think, four or five states.  But every state in this case, for
17    the 23 policies at issue in this case has the exact same two
18    years with no exception for fraud.
19         So -- but of course the policy issues aside, we have
20    Eleventh Circuit cases directly on point as to the law and the
21    facts and that can be the basis for a decision to grant summary
22    judgment in favor of Imperial on the remaining RICO and fraud
23    claims.
24         THE COURT:  Yes, sir.
25         MR. ROTHSCHILD:  Is there any other questions?

```
1            THE COURT:  No other questions from me.
2            MR. ROTHSCHILD:  Well, I will, I guess, reserve, if I'm
3    allowed -- do you want to hear from me?
4            THE COURT:  I'll give you a brief rebuttal after they
5    get done since it's your motion.
6            So what say you?
7            MR. GOSSELIN:  Good afternoon, Your Honor.
8            THE COURT:  Good afternoon.  You have something to say?
9            MR. GOSSELIN:  Just to address your first question,
10   what is the public policy consideration behind the contestable
11   clause.  Contestable clauses came out about a hundred years ago
12   and it was to provide assurance, mostly to orphans and widows,
13   that if there was some sort of misstatement in the application,
14   usually about health, that long after the insured has died, ten,
15   15, 20 years after the insured has died, that the insurance
16   company would not be able to come back and void the policy at
17   the time of claim.  And the reason for that is fairly obvious.
18   If you have, you know, somebody who's died who took out the
19   application and you know didn't mention that he has seen a
20   cardiac doctor and he dies later on, the insurance company can
21   say well, that's a material omission or perhaps a material
22   misrepresentation, the person who made that is deceased, he's
23   not even there to defend himself, so the public policy that
24   emerged out of that to provide assurance that the policy
25   benefits will be there at the time of claim was the contestable
```

1    clause. There was something -- it is a state requirement, but

2    it's something that the insurance industry actually embraced

3    because insurance is a promise.  Insurance companies want the

4    public to know that they will be there when the person dies.

5    That's what the contestable clause is all about.

6            That's not what's going on here and that's the point.

7    The -- first of all, these policies are intact.  I mean, there

8    are, I forget the exact number of policies that remain.  We

9    started off with about 64 policies.  Imperial selectively

10   terminated about half of those and then there are a group of

11   policies that still remain.  Sun Life filed a declaratory

12   judgment action stating that if these are wagering policies and

13   they violate the public policy against wagering in the various

14   states, the court is not going to leave them in place, and

15   there's lots of precedent for that because that violates public

16   policy.  But if the court concludes that these are not wagering

17   contracts, they're in force and they're there.  I mean -- and

18   right now, because Your Honor dismissed Count Seven of the

19   complaint, that issue is no longer a part of the case.

20           So we have whatever the number is, let's call it 28,

21   there are 28 policies.  And as long as Imperial doesn't continue

22   to selectively terminate them and they keep paying their

23   premium, when that death claim comes in, they're going to get

24   their money.  There is not going to be a contest of the policies

25   because the contestable period would prevent Sun Life from doing

1    that because the policy has been, I think by, you know, the

2    effect of your ruling is that these policies are valid.  So the

3    contestable clause does not come into this case right now.  And

4    from our perspective, it never did.  We understand that we

5    cannot void a policy based on a misrepresentation in the

6    application.  That's why Sun Life didn't bring an action to have

7    the policies declared void.

8         If you'll recall from the December 9th argument when we

9    were here, I went through this, although Mr. Rothschild says

10   this is esoteric, this is actually very important.  There's a

11   distinction.  A voidable policy is different than a void policy.

12   If I have a contract with somebody, under the law if that person

13   committed fraud in the inducement, I can elect to void that

14   policy.  I don't have to, I can waive it.  I can choose not to

15   stand on my rights and I can keep the policy in force or I can

16   assert the fraud and I can void the policy.  The contestable

17   clause is a contractual relinquishment on your right to void the

18   policy.  You can only do that for two years.  A void policy is

19   different than a -- I'm sorry.  A voidable policy is different

20   than a void policy.  A void policy, void ab initio is something

21   that never took effect because the law doesn't allow it to take

22   effect.  And there's a host of cases in Florida and elsewhere

23   that say policies that are taken out that lack an insurable

24   interest or are procured for the purpose of wagering, they're

25   void ab initio, they never took effect.  And because of the fact

1   pattern here, we asserted a claim for declaratory judgment that

2   the policies were void ab initio because if they were wagering

3   policies, if the court found them to be wagering policies,

4   they're void ab initio.  That was not Sun Life trying to void

5   them based on material misrepresentations in the application.

6   It's a very important distinction because we had never, ever

7   attempted to assert that these policies are void due to material

8   misrepresentations.  We've never asserted that.  We're not

9   asserting it now and we never have.  The only thing we alleged

10  is that if the policies are wagering contracts and if that

11  violates the law in the relevant jurisdiction, they may be void

12  ab initio.  That is not part of the case now.  It's not part of

13  the case.

14          The only part of the case is our claim for fraud and

15  for racketeering activity.  Those are damages claims.  So to be

16  clear, if somebody dies tomorrow, you've already concluded, and

17  assuming that ruling, you know, we have appeal rights of course,

18  but you've ruled that the Count Seven claim is no longer part of

19  the case.  If somebody dies tomorrow, it's a valid contract.  If

20  they paid their premium, they would get the death benefit.  So

21  the contestable clause will not be a bar to that claim.

22  Contestable claim is not part of this case. So it's important to

23  understand that distinction.

24          The *Martinez* case, respectfully I disagree with

25  Mr. Rothschild.  In that case, the receiver, Roberto Martinez,

1    he took over the received entities.  There were a thousand

2    policies owned by Mutual Benefits and related entities that are

3    all owned by these entities that are engaged in fraud.  The SEC

4    shut them down, appointed Roberto Martinez, an attorney down in

5    Miami to take over the companies, and he stood in the shoes of

6    all of the policy owners.  In the reply brief filed by Imperial

7    they say no, no, no, there was this policy owned by Anthony

8    Livoti and that was not part of the received entities and

9    therefore, you should conclude that the Third Circuit said it's

10   okay to allow a nonpolicy owner to invoke the contestable

11   clause.  I mean, they're saying you should allow a

12   nonpolicyholder to invoke a defense contained in a contract to

13   which the defendant is not a party.

14        That is not what happened in the *Martinez* case and I

15   had to do some digging, but I pulled up a copy of the

16   receivership order, I'm happy to hand it up to you.  The

17   receivership order includes the Livoti party that they mention

18   in the reply brief.  The point there is that Roberto Martinez

19   was the owner of all of the policies that were involved in the

20   *Martinez* decision.  They were actually the -- he was actually

21   the owner or he stood in the shoes of the actual owner.

22   Therefore, it's okay for a owner to invoke a contract-based

23   defense as long as the owner is part of the contract.

24        In this case, all of the policies are owned by special

25   purpose vehicles.  Now granted, they're special purpose vehicles

1    somewhere in the higher -- if you look at the corporate family

2    tree, there's dozens of various entities, special purpose

3    vehicles are within that.  But they are not -- those policy

4    owners are not the defendants in the fraud case and the civil

5    racketeering case.  The defendant in those counts are -- that's

6    Imperial Holdings, Inc.  Imperial Holdings, Inc. is not now and

7    never has been an owner of the policy.  So they're asking the

8    court essentially to allow them to pierce their own corporate

9    veil so that they can take advantage of a contract-based defense

10   in a contract to which they are not a party.  *Martinez* did not

11   address that.  I mean, nobody argued it.

12         And by the way, the insurers -- and I know this because

13   I was representing them in that case, this issue never came up.

14   So nothing was argued about this in front of the Eleventh

15   Circuit.  This was something that the Eleventh Circuit added,

16   but it wasn't what the parties briefed.  The Eleventh Circuit

17   never addressed this question of whether you have to be a party

18   to a contract to invoke a contract based defense.  But that is

19   pretty elementary.  If you want to claim a defense under a

20   contract, you can't do that unless you're a party to the

21   contract.  It's very simple.

22         In this case, Imperial, when we alleged in our

23   complaint who all the owners of the policy were, we named each

24   and every special purpose vehicle, and they admitted that those

25   entities owned the policies.  We also, elsewhere in the

1   complaint, paragraph 50, we allege that Imperial holdings, Inc.

2   acquired ownership and they denied it.  So I don't think there's

3   any question now that the Defendant in this case is not an owner

4   of any of the policies, so the Defendants cannot invoke these

5   policy based defenses.

6        If I can go back to the first point about how this is a

7   little bit different.  This is not an attempt to get out of

8   paying a death claim and saying oh, you lied to us, we're not

9   going to pay the $10 million.  This is a damage claim based on

10  fraud that resulted in Sun Life paying tens of millions of

11  dollars in commissions that it never would have paid.  It's a

12  fraud claim based on issuing policies that, you know, we

13  considered them to be junk policies because they're never going

14  to yield a profit the way policies owned by consumers yield a

15  profit.  We thought we were issuing policies to consumers and if

16  they were, we would have made a profit.  That's caused damage

17  because we're going to honor these policies and now based on

18  your order, there is no choice.  We have to honor these

19  policies.  And the damage is that we're not going to have the

20  revenue that we would have expected in order to cover those

21  policies.

22        So as Judge Middlebrooks said when he addressed this

23  very argument in the *Sciaretta* case, Judge Middlebrooks said

24  there is a difference between standing on a policy and suing for

25  damages and trying to contest that policy.  What we are doing is

1    the latter.  The -- I'm sorry.  Thank God Mr. Moore is here.

2    We're doing the -- Judge Middlebrooks, when he addressed this

3    issue, he cited to the *Bankers Security Life Insurance Society*

4    *versus Kane* case, that's also an Eleventh Circuit case which

5    didn't address the issue directly, but it recognized that there

6    is a distinction between asserting a claim as an attempt -- as

7    an end-run about the contestable clause and asserting a damage

8    claim that's not an end-run around the contestable clause.

9    There's a difference between the two.

10   And then Judge Graham (sic) went on to say, the

11   Eleventh Circuit found that an insurance company cannot bring a

12   separate suit for -- separate tort suit for fraud when the fraud

13   suit would merely provide a different means to challenge the

14   validity of the insurance contract. So that's when you're not

15   allowed to bring a tort claim.  If you're trying to do some

16   end-run around the contestable clause to challenge it, that's

17   inappropriate.

18   That's not what's happening here.  And as I've said, if

19   there are death claims and the policies are not void ab initio,

20   Sun Life has no choice, it must pay those death claims.  This is

21   a damage claim to recover the premium that it doesn't have to

22   make those loss ratios make sense like we thought we were going

23   to have when we issued the policies.

24   Judge Middlebrooks went on to say first, if the policy

25   is found to be void ab initio because there was no insurable

1    interest at its inception, then the contestability period is not

2    applicable.  For purposes of this litigation, I think there's no

3    question that these policies -- you dismissed Count Seven.

4    There was not a factual finding of whether they're wagering

5    policies or not, so that is a little bit up in the air.  But for

6    purposes of the litigation, there is no Count Seven.

7         Judge Middlebrooks went on to say even if the policy is

8    not found to be void ab initio, Lincoln can still bring an

9    independent action in tort that seeks not to void the contract

10   but rather damages for the fraud.  That's what we are doing.  We

11   are not seeking to void the contract based on the fraud, we are

12   honoring the contract and we're seeking a damage claim because

13   of the fraud against a party that is not a party to the

14   contract.  It's completely different.

15        To accept the position that Imperial is offering here

16   would not be following *Martinez*, it wouldn't be following

17   *Martinez*.  I don't know of any case that says that a third party

18   can engage in rampant fraud and then that contestable clause

19   acts as a complete immunity to any type of consequence later on.

20   Any kind of -- that's essentially what they're arguing should

21   happen here.  That because they committed massive fraud

22   involving insurance contracts, they are immune from any

23   consequence of that conduct at all, and I just don't think

24   *Martinez* says that.

25        THE COURT:  Yes, sir.

1          MR. GOSSELIN:  If you have any other questions, I'm

2     happy to address that.

3          THE COURT:  No, sir.  I think I'm all set.  Thank you.

4          Mr. Rothschild, do you want brief rebuttal, sir?

5          MR. ROTHSCHILD:  Yes,  please.

6          Your Honor, first on the issue of ownership, Sun Life

7     pled in their second amended complaint at paragraph 50, Imperial

8     acquired title to the policies.  Now paragraph 50 has four other

9     sentences.  So rather than parse out every single one, the

10    answer just said denied.  But Sun Life's position as they've

11    pled, which they can't back away from now, is that Imperial

12    holdings is the owner.  So that's one response.

13         THE COURT:  So that part they were right about.

14         MR. ROTHSCHILD:  They were right about that part, yes.

15    The contestability clause is valid as we stand here today.  It's

16    valid until some court says it's not valid and you've thrown out

17    that claim.  So the contestability clause is valid.

18         The Eleventh Circuit has already answered that question

19    that fraud based claims -- and they answered this question in a

20    lawsuit which involved damages and claims to void the policies.

21    Fraud based claims, fraud and RICO, are barred by the

22    contestabilty clause.  And it's as specific a holding as I think

23    you will find.

24         Just a couple other small points.  Also in *Martinez*,

25    there were policies at issue, of the four or five, I think that

1    were at issue that did not involve death claims either so that's

2    sort of another factual similarity.  I think there were two

3    where the insured had passed away, but there were three where

4    they had not.

5         And then finally, in the Judge Middlebrooks' decision,

6    the owner was the one that was sued there.  So the issue of the

7    extent of the contestability clause wasn't an issue, *Martinez*

8    wasn't decided.  And although I have great respect for Judge

9    Middlebrooks, that case is not the precedent that governs the

10   decision in this case where you have Eleventh Circuit decision

11   from 2007 that is, we contend, directly on point as to the facts

12   and the law.

13        THE COURT:  Very well.  Thank you.

14        With respect to Defendant Imperial's motion for summary

15   judgment, docket entry 201, I do think that *Martinez* case is of

16   great significance on this issue and I do think -- I do want to

17   thank both sides for their more in-depth briefing of *Martinez*

18   that they've provided in their later pleadings.  I found that to

19   be most helpful.

20        Although it may seem curious to bring up issues of

21   public policy when we're talking about what appears to be a

22   clear precedent that's before the court, I think any time we

23   have a situation where the precedent seems to dictate a result

24   that is an uncomfortable perhaps for the court to do, that it's

25   worthwhile to think about the public policy issue for a moment.

 1    There are two reasons that it's good to have finality as to the

 2    validity of insurance contracts, it appears to me. One is so

 3    that more people will buy insurance.  People might perhaps buy

 4    less insurance if they were worried that down the road their

 5    policies could be challenged.  And having seen the consequences

 6    in a mortgage fraud situation of assets which are used as part

 7    of investment portfolios suddenly turning bad and having to be

 8    yanked out of investment portfolios with a lot of damages to

 9    commercial paper, there's a strong public policy reason why

10    insurance policies should be able to retain their value by no

11    longer being contestable.

12           In light of all that and for the legal arguments that

13    have been raised here and briefed by both sides, I am going to

14    grant Defendant Imperials's motion for summary judgment, docket

15    entry 201, and find that the remaining clauses, the fraud and

16    RICO, are barred by the incontestability clauses in the

17    insurance contracts.  I think that's kind of a harsh result for

18    Sun Life in light of what sure has some facial appearances of

19    being bad behavior, but I think the law dictates that result and

20    I'm bound to follow the law in that regard.  So therefore, I am

21    going to grant that motion for summary judgment.

22           That renders Sun Life's motion for partial summary

23    judgment moot, and that's docket entry 205, in light of the

24    ruling that I've just made.

25           I think that leaves us with Defendant Imperial's motion

1    for clarification and/or reconsideration.  And let's bring that

2    up now.  Who wants to argue that for Imperial?  You want to have

3    another shot?  Ma'am?  Okay.

4         MS. VILA:  Your Honor, the clarification portion of

5    that motion was based on Your Honor's statements at the last

6    hearing that the litigation privilege you believed applied to

7    the filing of Sun Life's lawsuits because you believed that

8    without applying the litigation privilege, it would have a

9    chilling effect on lawsuits.  None of the alleged breaches that

10   support Imperial's breach of contract claim are specifically the

11   filing of a lawsuit.

12        If you look at the complaint, there's five alleged

13   breaches.  One is interfering with the policy owner's sole right

14   to exercise its rights under the policies; another was the

15   refusal to honor change of ownership and beneficiary forms;

16   another was the refusal to mail certain grace notices; another

17   was broadly contesting the policies, and another was renouncing

18   on their obligation to pay death benefits.

19        Throughout the complaint, there's allegations that show

20   how Sun Life breached each of those provisions by conduct other

21   than just filing the lawsuit.  So for that reason, we think what

22   Your Honor intended to do, and we seek clarification, was

23   prevent Imperial from relying only on the filing of the lawsuit

24   but allow us to prove Sun Life's breaches of the contract by

25   other conduct and the other allegations we alleged.

1      THE COURT:  Now, why should I reconsider -- I think you

2  also ask in the alternative that I reconsider my ruling about

3  the litigation privilege.

4      MS. VILA:  Correct, Your Honor.

5      THE COURT:  Tell me why I should do that.

6      MS. VILA:  Yes.  That goes back to Mr. Rothschild's

7  argument about the fact that the state legislatures have spoken

8  and the Eleventh Circuit has spoken and confirmed what the state

9  legislatures have said.  There's a reason why insurance carriers

10 have only two years within which to bring lawsuits.  After those

11 two years, they cannot.  By applying the litigation privilege,

12 we're rendering that state statute that prevents them from

13 bringing a lawsuit post-years, we're rendering that meaningless.

14 We're extending that time when state legislatures have said they

15 only have two years.  So an insured will never have peace of

16 mind that the carrier will not sue on the policy if the carrier

17 will be protected by the litigation privilege.  It's basically

18 immunizing a breach of that policy when you do it in open court.

19 When you file a complaint.

20      It's the same as a covenant not to sue.  We cited cases

21 in our motion where the litigation privilege -- where covenants

22 not to sue were allowed to proceed, and were allowed to seek

23 damages, the parties there on covenants not to sue.  By applying

24 the litigation privilege to that type of contractual provision

25 as well, it renders it meaningless.  They're not going to be

1   held accountable for the provision that they agreed to and in

2   this case, it's a provision that is mandated by legislature.

3          So that was our position on why we thought the court

4   should reconsider, Your Honor.

5          THE COURT:  Thank you, ma'am.  You're in the enviable

6   position of telling me why I was right last time.

7          MR. GOSSELIN:  Well first, on the motion for

8   clarification, I didn't think there was anything unclear about

9   the order.  It said the complaint is dismissed and with the sole

10  exception of the allegation that Sun Life failed to change the

11  ownership on three policies.  In reality, there was actually --

12  if you look at the statement of undisputed facts, there are only

13  two policies, so we're down to two policies that Sun Life did

14  not change an ownership on.  Your order says that they can go

15  forward on that and that alone.  So there's nothing unclear

16  about it.

17         As far as reconsidering, I mean, I do think you got it

18  right the first time on that question, respectfully.

19         THE COURT:  You think I'm batting 500.

20         MR. GOSSELIN:  You had a better day last week, I have

21  to say, Your Honor.

22         Seriously, like the fact that you -- I mean, the point

23  you made last week, I think, is important in light of what you

24  did today because what you've done is just essentially put Sun

25  Life out of court.  And the prospect of being put out of court,

1    as Your Honor noted last week is, I mean, that enough ought to

2    have make people think twice about what kind of claims they

3    bring.  But if the mere filing of a lawsuit is also going to

4    subject you to another lawsuit after that, it has a terrible

5    chilling effect.

6         This is a -- the contestable clause is not a covenant

7    not to sue.  It isn't a covenant not to sue.  It says we won't

8    contest the policy based on the statements in the application.

9    And historically, that's, as I said before, something that

10   benefits a person at the time of claim.  We cited many, many

11   cases that say the filing of a declaratory judgment action is

12   not a breach of contract.  It's not an anticipatory breach of

13   contract, it's placing a dispute in the sound discretion of a

14   court so a party knows what it needs to do to comply with a

15   contract.  So filing a declaratory judgment action is not a

16   breach of contract and there's nothing to reconsider here.

17   Everything -- what Sun Life did in filing the complaint is

18   subject to the litigation privilege.

19         THE COURT:  Very well.  Thank you, sir.

20         Yes, ma'am.  Since it's your motion, I'll give you last

21   word.

22         MS. VILA:  Thank you, Your Honor.  Just a couple more

23   points.

24         If an incontestability provision is not a promise not

25   to sue, I'm not sure what is.  The word "contest" as defined by

1   Merriam-Webster's Dictionary is anything at issue to make it the

2   subject of a case, to make it the subject of a dispute.  It's a

3   promise not to sue.  Sun Life has sued, they have breached.

4          And as concerns the point Mr. Gosselin raised about the

5   anticipatory repudiation, that was only one of the breaches

6   alleged among the five examples of breaches we allege in the

7   complaint.  So that should not -- that should not justify

8   dismissal of our entire breach of contract claim.

9          THE COURT:  Very well.  I have reconsidered the

10  argument raised regarding the litigation privilege and I have

11  thought long and hard about it, and I am going to grant

12  Defendant Imperial's motion for -- not for clarification, but

13  for reconsideration and I'm going to dismiss Imperial -- excuse

14  me.  I'm going to deny Sun Life's motion to dismiss Imperial's

15  complaint in case number 13-80730 for the same reasons that I

16  discussed with respect to *Martinez*.

17         I think that those public policy issues -- this is an

18  interesting area of the law and in light of those public policy

19  issues that I've mentioned earlier and in the arguments that

20  Imperial's made, I am going to rule their way.

21         Now --

22         MR. GOSSELIN:  Your Honor respectfully, if I may, I

23  didn't quite frankly think that was going to be on the agenda

24  here.  I know they filed it, I glanced at the motion.  It's not

25  been briefed.  I think it would be -- I mean, I'm very surprised

1    that we've now had two reversals of what I thought were settled

2    issues in this case.  The first reversal throws Sun Life out of

3    court, the second reversal brings Imperial back into court and

4    at least with the second reversal, there's a motion for

5    reconsideration that hasn't been briefed.

6           I would at least hope that we would get the opportunity

7    to say what we need to say on that to perfect -- to make the

8    record clear.

9           THE COURT:  Well, let's do this then.  The motions in

10    limine are also pending.  Okay.  And the docket entry 284, the

11    motion for extension of time to serve objections.  I think 284

12    goes away if you have no objections to more time on 284 if they

13    agree that there are no authenticity objections; is that

14    correct?

15           MR. GOSSELIN:  On 284, I'm sorry, I'm not sure.

16           THE COURT:  That's their motion for an extension of

17    time to serve objections to Sun Life's exhibits.

18           MR. GOSSELIN:  Well, I would need to think about that.

19    I'm not sure what exhibits -- everything that we thought would

20    be happening on February 17th has now changed.  I think it makes

21    sense to give us a chance to think about that.

22           Another thing I would like to do, I would like to move

23    to sever the cases now.  Since Sun Life doesn't have a case,

24    there's no reason that it should remain as part of this docket.

25    It ought to be severed so that Sun Life can make an appeal.  The

1    way it stands now, Sun Life would not be able to take an appeal

2    until after the trial of the Imperial case and there's no reason

3    for that to happen since they're different claims and there's

4    nothing -- there's nothing consolidated anymore.  We have a

5    dismissed action and a nondismissed action.

6          THE COURT:  Well, I mean, once we have a consolidated

7    action, we have one action.

8          MR. GOSSELIN:  Right.  And we had a motion to sever for

9    different reasons, so I'm just making a motion here in open

10   court to sever that.

11         THE COURT:  Let's do this.  Let's get back together

12   next Wednesday the 11th at 4:00.  That gives you all a week to

13   talk among yourselves about what you want to do, I'll give you

14   the opportunity to file a brief in response to their motion for

15   reconsideration, that's their docket entry 269, what you just

16   essentially requested.  So I'll give you the opportunity to file

17   that, and we can revisit that issue for a third, and that time

18   will be the final time, if this is all still on the plate.

19         But I think you all need to talk about how this affects

20   our trial schedule and any other motions, and you need to do

21   some serious conversation between the parties about where we're

22   going with this, and I think if I give you a week to do that,

23   you should be able to do that in a week.

24         MR. GOSSELIN:  That's fine, Your Honor.  But there are

25   lots of motions that if we don't know the result of those and

1 we're having a trial on the 17th --

2    THE COURT:  What other motion do you need an answer to

3 now?

4    MR. GOSSELIN:  Well, one of the most significant

5 motions is the motion to preclude the testimony of Larry --

6 Mr. Johnson, their expert.  If you want to put all of this off

7 until after you reconsider the reconsideration motion, that's

8 fine, but I don't think we can do that next Wednesday and be

9 back on Tuesday for a trial.  That's my concern.  I mean,

10 everything that we've done up until now has been geared toward

11 being ready for Sun Life's trial.  We've done, you know, things

12 to get ready for their trial, we weren't worried about it after

13 last Wednesday, but now it requires a lot of changing and I

14 don't think we can wait until next Wednesday to know what's

15 happening on the following Tuesday.  So if we wait until

16 Wednesday, I would say we ought to put the trial off or we just

17 ought to go forward with the motions now.

18    THE COURT:  Let's do this.  Mr. Rothschild, do you have

19 an idea?

20    MR. ROTHSCHILD:  I do.  I think with your rulings today

21 on our motion -- on Imperial's motion for summary judgment, the

22 case got shorter regardless of the reconsideration of part of

23 our claim.

24    THE COURT:  Correct.

25    MR. ROTHSCHILD:  And if Your Honor still has the four

1   week period, perhaps we reconvene for pretrial conference on the

2   11th and we have trial starting the 23rd which gives us two

3   weeks.  Just throwing that out there.

4         THE COURT:  I'll tell you what.  Let's do this.  Why

5   don't I step off the bench for a few minutes and let you all

6   talk, and you see if you can come up with some kind of a joint

7   recommendation as to what we should do next.  It's always handy

8   if we give the lawyers a chance to solve problems that the

9   judges created.  And then you can see what you want to propose,

10   if you have something joint to propose.  If not, I'll take a

11   couple of competing proposals and pick from them.  But I think

12   it's only fair to give you some time after the events that have

13   taken place today before we decide precisely what we're going to

14   do next.

15         So why don't I step off the bench, I know it's 2:21, I

16   don't have anything else set for this afternoon, you take as

17   much time as you need to right now, just for this limited, you

18   know, logistical thing here.  Come knocking on my door when

19   you're ready for me to come back in, I'll come back in and we'll

20   decide when we're getting together next and how we're going to

21   proceed from this point on.

22         Very well.  So we'll recess in place.

23         (Brief recess)

24         THE COURT:  Well lady and gentlemen, what are we going

25   to be doing on this matter?

1          MR. GOSSELIN:  Your Honor, if I may?

2          THE COURT:  Yes, sir.

3          MR. GOSSELIN:  We talked briefly, I don't know that we

4     have an agreement and frankly, it's still -- a lot just

5     happened, we're sort of processing things, but I can tell you

6     what I think would make sense going forward.

7          The first thing is we have two very important issues.

8     We have this *Martinez* question and whether it bars an insurance

9     company from ever bringing a lawsuit that is in any way

10    connected to a policy that's more than two years old.  We also

11    have this question of the litigation privilege and whether that,

12    you know, bars a person from bringing a lawsuit that is related

13    to a policy.  They're important questions.  Sun Life's entire

14    case hangs on one of them.  Imperial's entire case almost entire

15    case hinged on the other one.  Reasonable people can disagree.

16    We've had, you know, two decisions going, you know, either way

17    on both of those issues.

18          It makes sense to me, and I think it would make sense

19    to Sun Life perhaps to certify those issues for an interlocutory

20    appeal so that we can get clarity on, you know, what is the

21    right thing.  And I do appreciate Your Honor's openness in

22    trying to get to the right result and you were -- I mean, you

23    talked last week about the chilling effect and the importance of

24    the public policy considerations, you raised them again here

25    today.  I think those are worthwhile inquiries.  And it just

1   doesn't make sense, practically speaking, for the parties to go

2   forward with some form of a trial with significant questions

3   open where there's a lot of room for reasonable disagreement

4   over the impact of these important questions.

5           So I mentioned this to Mr. Cuza and he, of course, you

6   know -- as always, of course he said he would take it to his

7   client but he couldn't commit to that.  I invite Imperial to

8   join us in that motion so that we get clarity, but I don't think

9   that we're going to get an answer from them today and I wouldn't

10   expect it.

11           But from my perspective, I think that's what makes

12   sense if we do that, then all of the scheduling issues, all of

13   the practicalities, they're all tabled for a little while until

14   we know what the issue is.  So that's the first thing.

15           The second thing is if we don't have an interlocutory

16   appeal where we can try to get clarity, it's hard to figure out

17   what should happen next because I guess our first question is

18   did the court reverse its decision from last week.  Is the state

19   of the case right now that the entire complaint has been brought

20   back in or is the state of the case right now, it involves three

21   policies essentially.  Three policies and the fraud claim.  Or

22   did the court --

23           THE COURT:  Is it something in between.

24           MR. GOSSELIN:  Okay.  When I walked out of here

25   thinking okay, I kind of know where you're going, but you're

1   going to let us brief the issue, we'll come back here next week

2   and then you will rule one way or the other on that.  I mean,

3   perhaps that's sort of the way things were left?

4            THE COURT:  Here's the way things are.  Okay.  Their

5   motion for reconsideration was granted.  Okay.  So your motion

6   to dismiss was denied in its entirety once I -- after my

7   reconsidering pursuant to their motion.  So everything that was

8   in the case before is still in there.

9            MR. GOSSELIN:  Okay.

10           THE COURT:  So I'm giving you the opportunity, since

11  you're saying hey I didn't get to -- you know, I didn't really

12  file anything on the motion to reconsider and I'm saying okay,

13  here's what I'll do.  I'll give you the chance to file whatever

14  you want to file so you have it in there for the record, and

15  then I guess we can put it that -- you know, I could potentially

16  reconsider my reconsideration, but I don't want to give you

17  particularly any false hope, but I do want to give you the

18  chance to put whatever it is that you want to put in the record.

19           MR. GOSSELIN:  Okay.  If the state of things now is

20  that there's an order today denying our motion to dismiss, then

21  we now -- I would hope we would get 10 days from now to file an

22  answer.  We actually had drafted an answer and we can't file

23  that because we have to file --

24           THE COURT:  You have more stuff to answer now.

25           MR. GOSSELIN:  We do have more stuff to answer.  So

1   under the rules, we would get, I believe, 10 days from the date

2   of a dismissal to file our answer.  That brings us up to the

3   17th.

4          Now that the case -- if the state of the case remains

5   that it includes everything, we're going to be filing third

6   party claims and we laid all of this out in our motion for

7   severance.  We didn't need to do that if we're talking about

8   three policies.  But if we're talking about everything, we do

9   need to do that so we will be answering -- we will be bringing

10   in third party claims.  Then they will then have an opportunity

11   to file their answers or motions to dismiss or what have you,

12   they may want to take discovery.

13          If we go that route, I just don't think we can have a

14   trial in the three week time period that we scheduled for this.

15          THE COURT:  Okay.

16          MR. GOSSELIN:  So that's -- if that's what happens,

17   then I think the trial has to be taken off calendar and what

18   would make sense is that we have probably a scheduling

19   conference once all the parties are in and we know what claims

20   are in and we deal with that in an appropriate way once

21   everybody is there to deal with it.

22          On the other hand, if the state of the case remains,

23   it's just the three policies, then --

24          THE COURT:  It's not.

25          MR. GOSSELIN:  Okay.  Then, I mean, we could do a trial

1    in the three week period that's been blocked for that.  But if

2    it's not going to be that, I don't think we can have a trial in

3    that three week period.

4            THE COURT:  Okay.  Very well.  So your two positions,

5    position number one is certify matters for interlocutory appeal.

6    Position number two, essentially, let's reschedule, give us time

7    to answer, we'll have a new scheduling conference and figure out

8    when we're going to trial then.

9            MR. GOSSELIN:  Yes, sir.

10           THE COURT:  Okay.  Very well.  Imperial?

11           MR. ROTHSCHILD:  Well, our proposal is since -- because

12   the parties have worked long and hard to go to trial during this

13   four week period, I mean, we think the case as it stands now is

14   maybe a four to five day, maybe only a three day trial.  And you

15   know, we've all blocked off the time, both sides have, and

16   obviously the case has changed but we don't believe -- we want

17   to go forward during this period.  But obviously things have

18   changed today.  So the proposal that I suggested earlier that we

19   have another pretrial conference on Wednesday and we tentatively

20   hold the trial date for the 23rd, but to address just on the

21   details of Mr. Gosselin's proposals.

22           The second one, I don't think they really are entitled

23   to another 10 days.  They had their answer ready, you've put

24   back in the allegations that we had about the filing of the

25   complaint.

1      THE COURT:  I'm going to give them another 10 days

2  because they've got to answer a lot more stuff than they had

3  answered before.

4      MR. ROTHSCHILD:  Okay.  So that puts us -- their answer

5  then would be Monday -- well, I guess Monday is the holiday.  So

6  the 17th.

7      So as far as bringing in all kind of other claims, we

8  kind of addressed that when we briefed the motion to sever and

9  the motion of the interlocutory appeal.  I mean, as you alluded

10  to earlier, Your Honor, it's one case.  Claims and

11  counterclaims.  I mean, their claims, the only reason we brought

12  it separately was because we, under the Rules, couldn't just

13  file a counterclaim apart from an answer.  So we got it there so

14  everything could be all -- discovery could go together for over

15  a year.  They're not going to be able to meet the standard to

16  get an interlocutory appeal, we don't believe.  So we're likely

17  to propose that.  We haven't had a chance to consult with our

18  client, but I just wanted to be as up front as I could at this

19  point.

20      THE COURT:  Sure.  Here's what I'm going to do.  I'm

21  going to put us down for another pretrial conference on

22  Wednesday the 11th at 4:00.  And everybody needs to think hard

23  about what they want to do between now and then and we'll take a

24  look at it.  I don't think that's necessarily something that we

25  can resolve between now and then.

1          I know that the big advantage of consenting to trial

2     before a Magistrate Judge is you get a date certain, you had a

3     date certain, we kept that date certain up, the case that that

4     was the date certain for has fundamentally changed and instead

5     of becoming primarily your case, it's now become primarily your

6     case.  And that does have an impact on everybody.  And I should

7     note for the record that I was looking over at Sun Life's table

8     for the first "your case" and I was looking over at Imperial for

9     the second Sun Life case.

10          And so I think it's only fair that we really examine

11    whether we can still meet that trial period or not.  And so I

12    will entertain any motions from anybody to make the decision as

13    to what trial period we can entertain, but I really urge you to

14    talk to each other and I do want to remind you that Magistrate

15    Judge Matthewman, who I believe you all had a settlement

16    conference in front of, is quite willing to make himself

17    available if it would be helpful to have further discussions

18    with him.  I know he's going to be taking over the criminal duty

19    starting this Friday at 5:00, so I don't know that you're going

20    to be able to do much right now.  However, Magistrate Judge

21    Hopkins might be available if the parties were to think that

22    that was an option that they might want to explore and if you

23    tell me that you want to explore that option, I'll talk to Judge

24    Hopkins and see if he's available.  But I'll leave it up to you

25    all to think about that.

1          MR. ROTHSCHILD:  Minor housekeeping.  I think we had

2    some deadlines tomorrow for jury instructions.  Can we -- is

3    there any opposition to just stay those deadlines?

4          MR. GOSSELIN:  Yeah.  I mean, of course we would agree

5    to that.  There are -- and I appreciate that you don't -- we

6    need to talk about this next week, there are some practical

7    considerations.  For example, today we were supposed to put down

8    a payment to reserve a block of hotel rooms.  We want -- we, of

9    course, wanted to wait as long as we could to see what happens

10   here, I'm glad we did that.

11         THE COURT:  Sure.

12         MR. GOSSELIN:  I would assume, based on everything you

13   said, we're probably not having a trial.  If we come back here

14   Wednesday, we're probably not coming back the following Tuesday

15   to begin a trial.

16         THE COURT:  It's fair to say that we are not starting

17   on the 17th.

18         MR. GOSSELIN:  Okay.

19         THE COURT:  That's simply not going to happen at this

20   point.  We'll see whether we're going to be starting on the 23rd

21   or not, but we should determine on the 11th, if the parties

22   can't determine before then, that, you know, whether we can

23   start the 23rd.

24         I do want to make everybody aware that I don't intend

25   to -- I don't intend to force anybody to go to trial before

1    they're ready on a dramatically changed case.  Okay?

2              MR. GOSSELIN:  All right.

3              THE COURT:  So I'll let you know how I'm thinking in

4    that regard.  I believe one of your cohorts wanted to talk to

5    your table, Mr. Rothschild?

6              MR. MOORE:  Mr. Rothschild raised the issue.

7              THE COURT:  Very good.  He reads minds sometimes in the

8    same room.  He's quite talented.

9              Okay.  Anything further that we need to get into today?

10   Very well.  I've left you, I'm sure, no doubt many things to

11   think about.

12             So we're in recess and I'll see you all next week.

13   Thank you very much.

14             (PROCEEDINGS CONCLUDED)

                     * * * * *

15                C E R T I F I C A T E

16   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

17

18   _____          /s/ Dawn M. Whitmarsh
     Date                      DAWN M. WHITMARSH, RPR

19

20

21

22

23

24

25

**PROCEEDINGS RECORDED BY DIGITAL AUDIO RECORDING**
**TRANSCRIPT PRODUCED BY COMPUTER**